UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| FARMERS ALLIANCE MUTUAL INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 08-CV-0532-CVE-FHM |
| EDWARD WILLINGHAM, JR. and JOYCE WILLINGHAM, | ) ) ) ) |
| Defendants. | ) ) |

## OPINION AND ORDER

Now before the Court are Defendant Joyce Willingham's Motion for Summary Judgment and Brief in Support (Dkt. # 35), Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. # 36, the parties' joint motion to strike deadlines (Dkt. # 46) and Plaintiff's motion to clarify (Dkt. # 47) . Plaintiff Farmers Alliance Mutual Insurance Company (FAMI) seeks a declaration that defendants' insurance policy does not cover certain civil claims asserted against defendants. The parties agree that there are no genuine issues of material fact, and both plaintiff and defendant Joyce Willingham[1] (Joyce) seek summary judgment. Edward Willingham, Jr. (Edward, and together with Joyce, the Willinghams) has failed to plead or defend in this action, and the Court Clerk entered default against him on August 27, 2009. Dkt. # 39.[2]

---

[1] Joyce Willingham and Edward Willingham, Jr. have divorced, and Joyce "has been restored to her maiden name of Joyce Bingham." Dkt. # 35, at 2. However, the pleadings and other documents in this case, including her motion for summary judgment, refer to her as "Joyce Willingham." See id.

[2] FAMI moves for summary judgment against both Joyce and Edward. Due to Edward's failure to plead or defend and the Clerk's entry of default, FAMI is entitled to a default judgment against Edward Willingham, Jr., if it so moves.

**I.**

This is a dispute over insurance coverage of civil claims asserted against the Willinghams arising out of a child molestation incident. Edward pleaded guilty to lewd molestation and indecent exposure. Dkt. # 35, at 3; Dkt. # 36, at 3. In July 2007, Edward molested a minor child who was staying overnight at the Willinghams' house. Dkt. # 35, at 2; Dkt. # 36, at 3. Joyce was asleep downstairs and woke up to realize that Edward was not in bed. Dkt. # 35, at 3, Dkt. # 36, at 3. She went upstairs and discovered an act of molestation by Edward against the victim. Id. The victim's parents filed a civil suit against Edward and Joyce in the District Court for Creek County, Oklahoma, Case No. CJ-2008-829. Dkt. # 35, at 3; Dkt. # 36, at 4. The parents seek damages from Edward for assault and battery and intentional infliction of emotional distress, and from Joyce for negligence. Dkt. # 36, at 2-4.

FAMI issued the Willinghams a homeowners' insurance policy for the policy period June 5, 2007 to June 5, 2008 (the Policy), which includes the date of the molestation incident. Dkt. # 35, at 2; Dkt. # 35, at 2-3. Joyce has demanded that FAMI defend and indemnify her in the civil suit. Dkt. # 2, at 2; Dkt. # 35, at 3.

**II.**

Summary judgment pursuant to Fed. R. Civ. P. 56 is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Kendall v. Watkins, 998 F.2d 848, 850 (10th Cir. 1993). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

2

party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 317. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Id. at 327.

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the plaintiff." Anderson, 477 U.S. at 252. In essence, the inquiry for the Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 250. In its review, the Court construes the record in the light most favorable to the party opposing summary judgment. Garratt v. Walker, 164 F.3d 1249, 1251 (10th Cir. 1998).

### III.

FAMI argues it has no duty to defend or indemnify Joyce because the Policy's intentional acts and sexual molestation exclusions preclude coverage of the civil claim against her. Joyce argues that the intentional acts exclusion is ambiguous, and does not exclude coverage of Joyce's

alleged negligence. She argues that the Policy's severability clause requires separate treatment of each insured, and that Edward's actions do not affect her coverage.[3]

**A.      Insurance Contract Construction**

"The interpretation of an insurance contract is governed by state law and, sitting in diversity, we look to the law of the forum state." Houston Gen. Ins. Co. v. Am. Fence Co., Inc., 115 F.3d 805, 806 (10th Cir. 1997) (applying Oklahoma insurance law).[4] In Oklahoma, interpretation of an insurance contract is a matter of law. Max True Plastering Co. v. U.S. Fid. and Guar. Co., 912 P.2d 861, 869 (Okla. 1996). The insured has the burden of showing that its claim is covered under the policy. See U.S. Fid. and Guar. Co. v. Briscoe, 239 P.2d 754, 756 (Okla. 1952) (noting that "the contractor must bring himself within the terms of the policy, before he can establish insurer's liability thereon); see also Pitman v. Blue Cross and Blue Shield of Okla., 217 F.3d 1291, 1298 (10th Cir. 2000) ("the insured has the burden of showing that a covered loss has occurred"). Once the insured establishes coverage, "the insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." Pitman, 217 F.3d at 1298. Therefore, summary judgment in favor of the insurer is proper when the undisputed facts show that the insured has failed to establish a covered claim under its insurance policy. See, e.g., VBF, Inc. v. Chubb Group of Ins. Cos., 263 F.3d 1226 (10th Cir. 2001) (affirming the district court's grant of summary judgment to the insurers

---

[3]     Joyce devotes a portion of her response to FAMI's motion for summary judgment to a discussion of Wisconsin law, apparently in response to FAMI's citation of a Wisconsin case. See Dkt. # 41, at 4-9. The parties agree that Oklahoma law governs the Policy, Joint Status Report, Dkt. # 14, at 2, and neither party now argues for the application of any other law. Accordingly, this Court need not address Joyce's discussion of Wisconsin law. She also argues that public policy does not preclude coverage. Dkt. # 35, at 9-10.

[4]     The parties agree that the insurance contract at issue is governed by Oklahoma law. Joint Status Report, Dkt. # 14, at 2.

4

where the undisputed facts established that, under Oklahoma law, the insured's claims were not covered under any of the policies).

In interpreting the Policy, this Court applies the Oklahoma rules of construction. See id. at 1230. Under Oklahoma law, an insurance contract should be construed according to the terms set out within the four corners of the document. First American Kickapoo Operations, L.L.C. v. Multimedia Games, Inc., 412 F.3d 1166, 1173 (10th Cir. 2005); Redcorn v. State Farm Fire & Cas. Co., 55 P.3d 1017, 1020 (Okla. 2002); London v. Farmers Ins. Co., Inc., 63 P.3d 552, 554 (Okla. Civ. App. 2002). If the terms of the contract are "unambiguous, clear and consistent, they are to be accepted in their ordinary sense and enforced to carry out the expressed intention of the parties." Roads West, Inc. v. Austin, 91 P.3d 81, 88 (Okla. Civ. App. 2004). A court should not create an ambiguity in the policy by "using a forced or strained construction, by taking a provision out of context, or by narrowly focusing on a provision." Wynn v. Avemco Ins. Co., 963 P.2d 572, 575 (Okla. 1998). A policy term will be considered ambiguous only if it susceptible to more than one reasonable interpretation. Max True, 912 P.2d at 869. However, the Oklahoma courts "will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered," and neither a "split in authority over whether a certain term is ambiguous," nor "the fact that the parties disagree" alone is sufficient to establish an ambiguity. BP Amer., Inc. v. State Auto Prop. & Cas. Ins. Co., 148 P.3d 832, 835-36 (Okla. 2005).

"The general declaration of insurance coverage, as established by the insurance policy and limited by its provisions, normally determines the insurance carrier's liability, and the insured's respective rights under the contract by identifying what risks are covered and excluded by the

5

policy." Dodson v. St. Paul Ins. Co., 812 P.2d 372, 377 (Okla. 1991). Any exclusions to general coverage:

> are read seriatim; each exclusion eliminates coverage and operates independently against the general declaration of insurance coverage and all prior exclusions by specifying other occurrences not covered by the policy. Thus, subsequent exclusions can further limit or even remove a covered risk from the general declaration of insurance coverage. In case of doubt, exclusions exempting certain specified risks are construed strictly against the insurer.

Id. (footnotes omitted).

**B.     The Policy**

The relevant portions of the Policy are set out below. Section II provides liability coverage. "Coverage E - Personal Liability" states:

> if a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' . . . caused by an 'occurrence' to which this coverage applies, we will:
>
>> 1. Pay up to our limit of liability for the damages for which the 'insured' is legally liable . . . ; and
>>
>> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent . . . .

Dkt. # 36-9, at 4. "Bodily injury" is defined as "bodily harm, sickness or disease, including required care, loss of services and death that results. Dkt. # 36-8, at 3. "Occurrence" is defined as "an accident . . . which results, during the policy period, in: (a) bodily injury . . . ." Id. "Insured" is defined as "you and residents of your household who are . . . your relatives . . . ." Id. The named insureds on the policy are Edward and Joyce. Dkt. # 36-6, at 7.

The Policy's liability coverage is subject to exclusions. The first exclusion listed is for intentional acts:

6

> **1.     Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to 'bodily injury' . . . :
>
> **a.**     Which is expected or intended by the 'insured.'

Dkt. # 36-9, at 4.  However, this language is replaced by an Oklahoma endorsement.  The top of the endorsement states: "**SPECIAL PROVISIONS - OKLAHOMA   THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**"  Dkt. # 36-11, at 1.  "Section II - Liability Coverages" of the endorsement states:

> Under **1. Coverage E - Personal Liability** and **Coverage F - Medical Payments to Others**, Item **a** is deleted and replaced by the following:
>
> **a.**     Which is expected or intended by one or more 'insureds.'[5]

Dkt. # 36-11, at 4.

There is a second relevant exclusion to Coverage E - Personal Liability and Coverage F - Medical Payments to Others.  Those coverages also do not apply to "bodily injury" "[arising] out of sexual molestation, corporal punishment or physical or mental abuse . . . ."  Dkt. # 36-9, at 6.  The molestation exclusion is not affected by any endorsement.

---

[5]     Joyce did not include this portion of the policy in her motion for summary judgment, and represented that the exclusion for intentional acts was for "'bodily injury'. . . : a. Which is expected or intended by **the 'insured**.'"   Dkt. # 35, at 4 (emphasis in original).  In her motion for summary judgment, Joyce relies heavily on  the Policy's use of "the insured," without making any reference to the language in the Oklahoma endorsement.  In her response to FAMI's motion for summary judgment, Joyce does not dispute that the Oklahoma endorsement is a part of the Policy, but argues that the endorsement creates an ambiguity.  Dkt. # 41, at 2-3.  This Court will assume that Joyce's complete failure to acknowledge the Oklahoma endorsement (which directly affects a major argument in her motion for summary judgment) was a gross oversight, rather than an attempt to mislead this Court.

7

The "Conditions" part of Section II contains a "severability of insurance" provision. It states: "[t]his insurance applies separately to each 'insured.' This condition will not increase our limit of liability for any one 'occurrence.'" Dkt. # 36-9, at 7.

**C.     Coverage**

1.     The Molestation Exclusion

FAMI argues that the Policy's sexual molestation exclusion precludes coverage because the negligence claim against her is for injury arising out of Edward's acts of sexual molestation. Dkt. # 36, at 10. Joyce argues that she is being sued for negligence, not for sexual molestation and, thus, that the molestation exclusion does not apply. Dkt. # 35, at 7-8.

The Policy does not cover liability for "bodily injury" "[a]rising out of sexual molestation, corporal punishment or physical or mental abuse . . . ." Dkt. # 36-9, at 6. FAMI does not dispute that the victim's parents' claim against Joyce is for "bodily injury." The issue is whether the claim "arise[s] out of" sexual molestation. Joyce argues that the exclusion does not apply to her because she took no part in the act.

The Oklahoma Supreme Court dealt with a similar issue in Phillips v. Greenfield, 859 P.2d 1101 (Okla. 1993). In that case, parents were sued for negligence when their son broke into a shed, took the family motorcycle, and injured a passenger in an ensuing accident. After recovering a judgment in their favor, the plaintiffs brought a garnishment action against the parents' insurer. The insurer argued that the negligence claims were not covered because the parents' policy excluded coverage for "bodily injury arising out of the ownership, maintenance, use, loading or unloading of a motor vehicle owned or operated by an insured." Id. at 1103. The Oklahoma Supreme Court rejected an argument similar to the one Joyce makes here, determining that "[c]overage does not turn

on the legal theory under which liability is asserted, but on the cause of the injury." Id. at 1105.  It did not matter that the parents were sued for negligence, and that they had not used the motorcycle themselves.  The court found that parents' suit was "intertwined with the ownership and/or use of the motorcycle," and therefore the "bodily injury sued for [was] clearly excluded under the policy language." Id. at 1106.  In Phillips it did not matter that the parents' negligence was a contributing, or even a necessary cause of the injury alleged, because the use of the motorcycle was also a cause of the injury.  Cf. 7 LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE § 101:52 (3d ed. 2009) ("[t]he phrases ['arising out of' and 'resulting from'] are generally considered to mean 'flowing from' or 'having its origin in'").  The Tenth Circuit has noted that, in the insurance context, "the majority rule is that policy language excluding losses arising out of some event excludes losses caused by that event even when they are also caused by other events." Georgacarakos v. U.S., 420 F.3d 1185, 1187 (10th Cir. 2005) (Federal Tort Claims Act case).  The Tenth Circuit has also addressed a similar insurance coverage dispute over negligence claims relating to an act of sexual molestation.  See All Amer. Ins. Co. v. Burns, 971 F.2d 438 (10th Cir. 1992).  The court refused to separate the negligence allegations from the acts of sexual abuse and held that a policy exclusion for "personal injury arising out of the willful violation of a penal statute" precluded coverage.  Id. at 442.[6]

---

[6] Joyce cannot rely on Lutheran Benevolent Insurance Co. v. National Catholic Risk Retention Group, Inc., 939 F. Supp. 1506 (N.D. Okla. 1995), wherein that court considered whether a diocese's alleged negligent retention of a sexually abusive priest was an "occurrence" under the diocese's liability policy.  Id. at 1510.  The issue of whether the victims' negligence claims against the diocese "arose out of" sexual molestation was not before that court.  That court did address whether an endorsement providing separate coverage for sexual misconduct applied, and found that the endorsement did not control all claims involving sexual misconduct.  Id. at 1514.  That court found that the insurer's liability for the claims at issue were governed by the general terms of the policy, rather than by the endorsement.  Contrary to Joyce's contention, however, that court did not hold that policy exclusions for sexual misconduct did not apply to negligent retention claims.

9

Just as the negligence claims in <u>Phillips</u> were "intertwined with the ownership and/or use of the motorcycle," 859 P.2d at 1106, the negligence claim against Joyce is intertwined with the acts of sexual molestation. The acts were a necessary cause of the injuries the victim's parents allege. Thus, the negligence claim against Joyce "arises out of sexual molestation." FAMI has no duty to indemnify Joyce against the parents' claim because it falls under the Policy's sexual molestation exclusion.

2.      <u>The Intentional Acts Exclusion</u>

FAMI argues that the intentional acts exclusion also precludes coverage. Joyce argues that the exclusion makes the Policy ambiguous, and should be construed in her favor.

The intentional acts exclusion does not make the Policy ambiguous. Joyce essentially argues that the original exclusion language and the Oklahoma endorsement are contradictory, and that the presence of both makes the policy ambiguous. The two provisions are not contradictory. The Oklahoma endorsement states that the original language is "<u>deleted</u> and <u>replaced by</u>" the Oklahoma-specific language. Dkt. # 36-11, at 4 (emphasis added). The endorsement unambiguously replaces the original intentional acts exclusion. "Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy and as amplified, extended, or <u>modified</u> by any rider, <u>endorsement</u>, or application attached to and made a part of the policy." OKLA. STAT. tit. 36, § 3621 (emphasis added). The endorsement's intentional acts exclusion is the only intentional acts exclusion in the Policy.[7]

---

[7]     Joyce contends that FAMI's practice of attaching endorsements to standard policy language is "careless and misleading" and that FAMI "should have undertaken a revision of the entire policy." Dkt. # 41, at 3. The Oklahoma courts consistently recognize endorsements that modify standard policy language. See, e.g., <u>Bituminous Cas. Corp. v. Cowen Constr., Inc.</u>, 55 P.3d 1030, 1034-35 (Okla. 2002) ("[t]he elimination of the language used in the original policy by way of the special endorsement is legally significant"). The inclusion of an endorsement is not misleading.

10

The Policy excludes coverage of claims for bodily injury "[w]hich is expected or intended by one or more 'insureds . . . .'" Dkt. # 36-11, at 4. FAMI argues that the claim against Joyce falls under this exclusion because the bodily injury claimed was expected or intended by Edward, an "insured." In BP America, 148 P.3d 832, the Oklahoma Supreme Court considered a similar situation. In that case, Rowland and BP America were involved in a construction project. Rowland was the named insured and BP America an additional insured under a liability insurance policy. One of Rowland's employees was involved in a car accident, and both Rowland and BP America were sued. BP America sought coverage under the insurance policy, which contained an exclusion for "'[b]odily injury or 'property damage' arising out of the ownership, maintenance, use or entrustment to others of any . . . 'auto' . . . owned or operated by . . . any insured." Id. at 836 (emphasis added). The insurance company argued that the "any insured" language negated coverage as to all insureds when any one insured's actions fell under the clause. BP America argued that the language was ambiguous, and that "'any' should be read, not in the sense of 'all,' but as 'the.'" Id. Answering certified questions from this court, the Oklahoma Supreme Court held that the "any insured" language was not ambiguous, and that it "exclude[d] from coverage all automotive occurrences attributable to any of the insureds," even claims against innocent parties. Id. at 836, 839. Because the claims against BP America were for bodily injury arising out of an insured's (Rowland's) use of an automobile, those claims were not covered. This holding is consistent with an earlier case in which the Oklahoma Supreme Court held that a policy exclusion for assault and battery "committed by or at the direction of the In-sured" did not preclude insurance coverage of one insured partner where the other insured partner committed an assault. Employers Surplus Lines of Boston v. W.L. Stone, 388 P.2d 295, 297-98 (Okla. 1964) (emphasis added). Employers Surplus shows that, under

11

Oklahoma law, there is a difference between policy exclusions arising out of activities by "the insured" and by "any insured."

BP America is persuasive in this case. Although that case's holding was limited to exclusionary language in automobile insurance policies, its logic applies equally to homeowners' policies like the one at issue here. When construing "any insured" language in a comprehensive general liability policy, the Tenth Circuit arrived at the same conclusion as the Oklahoma Supreme Court did in BP America. See All Amer. Ins. Co. v. Burns, 971 F.2d 438, 445 (10th Cir. 1992). The Tenth Circuit held that a policy excluding coverage of "personal injury arising out of the willful violation of a penal statute . . . committed by . . . any insured" precluded coverage of claims against a church where a bus driver molested two girls. The exclusion applied to claims against the church because the driver was also an insured under the policy. Id. Further, Joyce relied heavily on BP America in arguing that the (deleted and replaced) former policy language meant that Edward's intentional acts could not preclude coverage of her claim. See Dkt. # 35, at 5.

In this case, the intentional acts exclusion applies to intentional acts by "one or more insureds." Dkt. # 36-11, at 4. This language differs from the "any insured" and "the insured" language discussed above. Nevertheless, this Court finds that "one or more insureds" is not ambiguous, and means the same as "any insured." "One or more" is another way of saying "any." This is not the same as excluding acts by "the insured" because the term "one or more" contemplates multiple insureds. The Policy's intentional acts exclusion applies to intentional acts committed by an insured, whether or not that insured is the one claiming coverage.

Therefore, the Policy's intentional acts exclusion precludes coverage of the negligence claim if that claim is for "bodily injury" "expected or intended" by Joyce <u>or</u> Edward. The claim is for bodily injury. <u>See</u> part III.C.1, <u>supra</u>. Edward pled guilty to lewd molestation and indecent exposure. Dkt. # 35, at 3; Dkt. # 36, at 3. These crimes both require intent. <u>See</u> OKLA. STAT. tit. 21, §§ 1123, 1021. The parents' civil complaint alleges that Edward acted intentionally. Dkt. # 36-5, at 3-4. The victim's bodily injury was caused by Edward's intentional acts. Thus, the negligence claim falls under the intentional acts exclusion, even though Joyce did not intend the bodily injury.

3.     <u>Effect of the Severability Clause</u>

Joyce argues that the severability clause removes her claim from the molestation and intentional acts exclusions. The clause states: "[t]his insurance applies separately to each 'insured.' This condition will not increase our limit of liability for any one 'occurrence.'" Dkt. # 36-9, at 7. Joyce argues that this clause effectively creates separate policies for herself and Edward. Dkt. # 35, at 8. Joyce would have this Court find that, pursuant to the severability clause, she must be treated as if she held a policy under which Edward was not also an insured. Even if this Court were to accept Joyce's argument, this would not affect the applicability of the molestation exclusion. That exclusion applies to all claims arising out of sexual molestation, no matter whether the perpetrator is an insured or not.

Futher, Joyce's argument regarding the effect of the severability clause is without merit. Joyce quotes <u>BP America</u> to support her argument. Dkt. # 41, at 11. In that case, the Oklahoma Supreme Court held that the severability clause <u>had no effect</u> on the policy's exclusionary clause. 143 F.3d at 841. The court rejected Joyce's argument, determining that "[t]he purpose of

13

severability is not to negate plainly worded exclusions."[8]  Id.  A policy exclusion "eliminates coverage and operates independently against the general declaration of insurance coverage." Dodson, 812 P.2d at 377.  The fact that the insurance policy covers Joyce and Edward separately does not mean that Joyce is covered for excluded claims.  Coverage might be severable, but excluded claims are outside the scope of coverage.

FAMI has no duty to defend or indemnify Joyce against the victim's parents' claim because it is not covered under the Policy;  it is excluded under both the molestation and intentional acts exclusions.[9]

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment and Brief in Support (Dkt. # 36) is **granted**, and Defendant Joyce Willingham's Motion for Summary Judgment and Brief in Support (Dkt. # 35) is **denied**.

**IT IS FURTHER ORDERED** that all scheduled deadlines, including the November 2, 2009 pretrial conference and November 12, 2009 nonjury trial are hereby **stricken**.  The parties' joint motion to strike deadlines (Dkt. # 46) and FAMI's motion to clarify (Dkt. # 47) are **moot**.

**IT IS FURTHER ORDERED** that plaintiff Farmers Alliance Mutual Insurance Company has no duty to defend or indemnify defendant Joyce Willingham against the claims asserted against her in Case No. CJ-2008-829 (District Court of Creek County, Oklahoma).

---

[8]  Joyce argues that Burns, 971 F.2d 438, and similar cases are distinguishable from this case because they did not involve  severability clauses.  Dkt. # 41, at 10.  For the reasons stated above, this argument is incorrect.

[9]  Because her claim is not covered, the Court need not address Joyce's argument that public policy does not preclude coverage.  See Dkt. # 35, at 9-10.

**IT IS FURTHER ORDERED** that counsel for plaintiff shall file a motion for default judgment against Edward Willingham, Jr. and shall submit to CM/ECF intake a proposed final judgment to include default judgment against Edward Willingham, Jr. and judgment against Joyce Willingham, no later than **October 22, 2009**.

**IT IS FURTHER ORDERED** that final judgment in this matter will not be entered until the 10-day period for defendants to respond to plaintiff's Amended Complaint (Dkt. # 44) has expired.

**DATED** this 20th day of October, 2009.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT